T.C. Summary Opinion 2012-43

UNITED STATES TAX COURT

RICK E. PAYNE AND DEE M. PAYNE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27091-10SL.                       Filed May 8, 2012.

Rick E. Payne and Dee M. Payne, pro sese.

<u>Peter T. McCary</u>, for respondent.

SUMMARY OPINION

WELLS, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code of 1986, as amended, and Rule references are to the Tax Court Rules of
Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. The instant case is before the Court on respondent's motion for summary judgment pursuant to Rule 121. We must decide whether respondent's Appeals Office abused its discretion when it upheld respondent's notice of Federal tax lien (NFTL) with respect to petitioners' 2007 and 2008 tax years.

Background

The facts set forth below are based upon examination of the pleadings, moving papers, responses, and attachments. Petitioners are husband and wife who resided in Georgia at the time they filed their petition.

Petitioners timely filed tax returns for their 2007 and 2008 tax years, but they failed to pay the full amount of their tax liability for each year. On April 23, 2010, respondent filed an NFTL with respect to petitioners' tax liabilities for 2007 and 2008. On April 27, 2010, respondent mailed to petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320. Petitioners timely submitted a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153 petitioners requested an installment agreement and the withdrawal of the NFTL. In an attachment to the Form 12153 petitioners explained that petitioner Rick E. Payne had lost his job during 2006,

that they had filed for bankruptcy during 2008, that they were still struggling financially, and that they were in the process of seeking a loan modification on their home mortgage.

On June 30, 2010, respondent's Appeals Office mailed a letter to petitioners indicating that the Appeals Office had received their Form 12153 and that their case had been assigned to Settlement Officer P.R. Brewton. On August 2, 2010, Ms. Brewton mailed a letter to petitioners scheduling a telephone conference for August 17, 2010. Ms. Brewton included a blank Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and she instructed petitioners to complete the form and submit all of the required attachments within 14 days. She wrote: "I cannot consider collection alternatives at your conference without this information."

Petitioners failed to contact Ms. Brewton at the time scheduled for their conference, and they did not submit the Form 433-A. On August 17, 2010, Ms. Brewton mailed petitioners another letter again requesting that they submit the financial information requested in her letter of August 2, 2010. She warned that if petitioners did not submit the requested information by August 31, 2010, she would make a determination on the basis of the information in the administrative file.

On August 27, 2010, Mr. Payne telephoned Ms. Brewton and informed her that petitioners had not received her August 2, 2010, letter. Ms. Brewton informed Mr. Payne that the August 2, 2010, letter had been sent to the same address as the August 17, 2010, letter, and that it had not been returned as undeliverable. Mr. Payne requested an extension of time until the end of September to submit the Form 433-A. Ms. Brewton refused to give petitioners an extension until the end of September, and she also refused Mr. Payne's request for a two-week extension. She told Mr. Payne that petitioners should submit the completed Form 433-A within seven days, by September 3, 2010. She warned him that she had to receive the completed Form 433-A by September 3, 2010, if petitioners wanted her to consider an installment agreement. According to her case activity report, Ms. Brewton "concluded the conference sustaining the lien filing" and scheduled another telephone conference for September 3, 2010, to discuss the Form 433-A and an installment agreement. After their telephone call, she mailed petitioners another blank Form 433-A.

Mr. Payne called Ms. Brewton on September 3, 2010, at the scheduled time. He informed her that petitioners had been unable to complete the Form 433-A and collect the required supporting documentation by the deadline. Mr. Payne asked Ms. Brewton a number of questions about the collection process and about

installment agreements. He also stated that he would try to save enough money to pay the balance down to $25,000 so that petitioners would be eligible for a "streamlined" installment agreement. Ms. Brewton wrote in her case activity report that she "ended the call sustaining the collection action".

Petitioners never submitted the Form 433-A, and on November 3, 2010, respondent's Appeals Office mailed to petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). Petitioners timely filed their petition in this case.

On or about June 15, 2011, respondent's counsel mailed petitioners a letter informing them that he intended to file a motion for summary judgment. On July 1, 2011, respondent's counsel spoke with Mr. Payne on the telephone, and Mr. Payne informed him that petitioners' son had recently passed away and requested more time to consider respondent's motion for summary judgment. Respondent's counsel mailed petitioners a letter on or about July 15, 2011, advising them that they should file a motion for a continuance with the Tax Court and informing them that he would not object to the granting of such a motion. However, petitioners did not file a motion for a continuance, and on September 2, 2011, respondent's counsel filed his motion for summary judgment. On September 8, 2011, petitioners finally filed a motion for a continuance with the

Court, explaining that their son had passed away during April. On September 12, 2011, the Court issued orders that petitioners respond by October 12, 2011, to respondent's motion for summary judgment and that respondent respond by October 12, 2011, to petitioners' motion for a continuance.

By the time petitioners filed their motion for a continuance, respondent's counsel had changed his mind about whether a continuance was proper, and in a response filed on September 22, 2011, respondent objected to petitioners' motion. Respondent's response explained that respondent had changed his mind because petitioners had delayed filing their motion for a continuance.

On October 20, 2011, the Court continued the trial and extended the time for petitioners to file a response to respondent's motion for summary judgment from October 12, 2011, to November 21, 2011. On November 15, 2011, the Court held a conference call with the parties. On November 16, 2011, the Court issued an order that, on or before December 15, 2011, respondent mail petitioners the required forms for submitting a collection alternative. The Court also ordered that, on or before February 1, 2012, petitioners submit to the Court any proposed collection alternatives on the forms respondent provided. Petitioners did not submit any collection alternatives by February 1, 2012, nor did they ever file a response to respondent's motion for summary judgment.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials and may be granted where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences are viewed in the light most favorable to the nonmoving party. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). However, the party opposing summary judgment must set forth specific facts that show a genuine issue of material fact exists and may not rely merely on allegations or denials in the pleadings. Rule 121(d).

Where the underlying tax liability is not in issue, we review the determination of the Appeals Office for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000). In reviewing for abuse of discretion, we will reject the determination of the Appeals Office only if the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 308 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Petitioners do not dispute the underlying liabilities. Consequently, we review the determination of the Appeals Office for abuse of discretion.

Where, as in the instant case, we review the Appeals Office's determination to sustain the filing of an NFTL for abuse of discretion, we review the reasoning underlying that determination to decide whether it was arbitrary, capricious, or without sound basis in fact or law. We do not substitute our judgment for that of the Appeals Office, and we do not decide independently whether we believe the lien should be withdrawn. See id. at 320.

Pursuant to section 6321, the Federal Government obtains a lien against "all property and rights to property, whether real or personal" of any person liable for Federal taxes upon demand for payment and failure to pay. See Iannone v. Commissioner, 122 T.C. 287, 293 (2004). The lien arises automatically on the date of assessment and persists until the tax liability is satisfied or becomes unenforceable by reason of lapse of time. Sec. 6322; Iannone v. Commissioner, 122 T.C. at 293. The purpose of filing, pursuant to section 6323, notice of the lien that arises under section 6321 is to protect the Government's interest in a taxpayer's property against the claims of other creditors. Filing an NFTL validates the Government's lien against a subsequent purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor. See sec. 6323(a); Stein v. Commissioner, T.C. Memo. 2004-124; Lindsay v. Commissioner, T.C. Memo. 2001-285, aff'd, 56 Fed. Appx. 800 (9th Cir. 2003).

If the Commissioner chooses to file an NFTL, he must provide the taxpayer with written notice not more than five business days after the filing, and he must advise the taxpayer of the right to a hearing before the Appeals Office. Sec. 6320(a). If the taxpayer requests such a hearing, the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The Appeals Office must also determine whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Secs. 6320(c), 6330(c)(3). Finally, the Appeals Office must consider any issues raised by the taxpayer at the hearing, including appropriate spousal defenses, challenges to the appropriateness of collection actions, and offers of collection alternatives such as an installment agreement. Secs. 6320(c), 6330(c)(2) and (3).

Respondent contends that the determination of the Appeals Office should be sustained because petitioners failed to provide a completed Form 433-A and attachments. We have consistently held that it is not an abuse of discretion for the Appeals Office to reject collection alternatives and sustain the proposed collection action on the basis of the taxpayer's failure to submit requested financial information. See Huntress v. Commissioner, T.C. Memo. 2009-161; Prater v.

Commissioner, T.C. Memo. 2007-241; Roman v. Commissioner, T.C. Memo. 2004-20. In doing so, the Appeals Office is following the requirements of section 301.6320-1(e)(1), Proced. & Admin. Regs. However, an Appeals officer's unreasonable denial of a request for more time to submit evidence may be an abuse of discretion. See Shanley v. Commissioner, T.C. Memo. 2009-17.

Assuming that petitioners never received the August 2, 2010, letter, the time that Ms. Brewton allowed petitioners to complete the Form 433-A and compile the required documentation was less than seven days. Considering that, when Mr. Payne talked to Ms. Brewton on the telephone on August 27, 2010, he did not yet have the blank Form 433-A and that Ms. Brewton instructed him that she had to receive the completed Form 433-A by September 3, 2010, we calculate that petitioners had considerably less than one week to complete the Form 433-A and gather the required associated documentation. It is possible, depending on the date Ms. Brewton mailed the blank Form 433-A, that petitioners had as little as 24 to 48 hours to complete the Form 433-A and gather documentation in time to mail it to Ms. Brewton so that she would receive it before September 3, 2010. Given the number of questions Mr. Payne asked during both telephone conversations with Ms. Brewton and given his age and obvious unfamiliarity with the process, we are not surprised that petitioners found it difficult to complete the Form 433-A and gather

the supporting documentation in time to mail them in such a short period, i.e., before September 3, 2010.

Additionally, we suspect that Mr. Payne may have been confused by Ms. Brewton's statement, at the end of their telephone conversations on both August 27 and September 3, 2010, that she was sustaining the collection actions. Respondent's counsel suggests that petitioners could have submitted their Form 433-A after September 3, 2010, but before the notice of determination was issued, and the Appeals Office would have considered it. However, according to her notes, Ms. Brewton specifically told Mr. Payne during their telephone call on August 27, 2010, that petitioners would not be eligible for an installment agreement unless she received their paperwork by September 3, 2010. Whether Ms. Brewton later told Mr. Payne something else is unclear from her notes, but we surmise from their actions that petitioners understood that their opportunity for an installment agreement or other collection alternative was foreclosed after September 3, 2010.

Ms. Brewton's refusal to grant petitioners an extension of 14 days to complete the Form 433-A appears inconsistent with the guidance in the Internal Revenue Manual (IRM). With regard to "no response cases", the IRM advised:

(1) If there is no response to the substantive contact letter, you must make a second attempt to contact the taxpayer.

(2) The case activity record must clearly document a minimum of 2 attempts.

(3) Letter 4000, Final Chance Letter is the preferred method for your second attempt.

Note: If the second attempt is by telephone, you must thoroughly document the contact in the case activity record.

(4) Ask the taxpayer if they have any further information for consideration before making a determination on the information already available; do not schedule a second conference unless circumstances warrant rescheduling, such as the taxpayer did not receive the original conference letter due to a change of address.

(5) Give a taxpayer that is delaying or not responding a reasonable, but specific, deadline to respond. As a general rule, allow 14 days in the Final Chance Letter. However, depending on the facts and circumstances, fewer than 14 days may be considered.

(a.) Giving a taxpayer fewer than, or more than, 14 days may be considered reasonable depending on the facts and circumstances.

(b.) We need to establish that we gave the taxpayer a reasonable chance to respond as well as provide them with the opportunity for a fair and impartial CDP hearing.

EXAMPLE:

The taxpayer has been provided 3 opportunities of 14 days each to provide a financial statement. Each opportunity was granted after the taxpayer called with a somewhat plausible reason why he wasn't able to comply earlier.

> The SO is ready to close the case yet grants the taxpayer a final opportunity of 5 days to provide a CIS.

IRM pt. 8.22.2.2.6.2 (Dec. 1, 2006). On the basis of the record, we are not persuaded that petitioners were given a "reasonable chance to respond" because they were not given a reasonable time to complete the Form 433-A and provide supporting documentation, despite their "somewhat plausible reason" for why they were not able to complete the Form 433-A sooner, i.e., that they did not receive the August 2, 2010, letter.

However, because we questioned whether Ms. Brewton provided petitioners with a "reasonable chance" to complete the Form 433-A and compile the required attachments, we ordered respondent to provide forms to petitioners to submit a collection alternative and allowed them an additional opportunity to propose a collection alternative by February 1, 2012. Had petitioners submitted a proposed collection alternative, we would have considered remanding the case to respondent's Appeals Office to consider the collection alternative, on the basis of our foregoing concerns as to the reasonableness of the time they were given to complete the Form 433-A. However, petitioners failed to submit a proposed collection alternative despite the additional time granted by the Court.

The Court may dismiss a case at any time and enter a decision against the taxpayer for failure properly to prosecute his case, failure to comply with the Rules of this Court or any order of the Court, or for any cause which the Court deems sufficient. Rule 123(b); Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir.1987), aff'g T.C. Memo. 1986-223; McCoy v. Commissioner, 696 F.2d 1234, 1236 (9th Cir. 1983), aff'g 76 T.C. 1027 (1981). Dismissal is appropriate where the taxpayer's failure to comply with the Court's Rules and orders is due to willfulness, bad faith, or fault. See Dusha v. Commissioner, 82 T.C. 592, 599 (1984); McCammon v. Commissioner, T.C. Memo. 2007-3; Curci v. Commissioner, T.C. Memo. 2005-273.

Throughout the pendency of their case, petitioners have repeatedly failed to file requested motions, responses, and other documents. Despite instructions from respondent's counsel and ample time, petitioners failed to file a motion for a continuance until after respondent filed his motion for summary judgment. Petitioners failed to file a response to respondent's motion for summary judgment, even after we extended the time for them to do so. Petitioners failed to submit a proposed collection alternative by February 1, 2012, in compliance with our order of November 16, 2011. According to respondent's counsel, when he contacted petitioners on February 3, 2012, they informed him that they had elected not to

complete a collection alternative form at this time.  Petitioners have failed to prosecute the instant case despite repeated opportunities and ample time.

On the basis of petitioners' repeated failures to comply with our orders and apparent disinterest in pursuing any collection alternatives, we will dismiss their case for lack of prosecution.  Accordingly, we will deny respondent's motion for summary judgment as moot.

In reaching these holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and order of dismissal will be entered</u>.